# EXHIBIT A

Case: 1:15-cv-07239 Document #: 1-1 Filed: 08/18/15 Page 1 of 18 PageID #:5



# Notice of Service of Process

null / ALL
Transmittal Number: 14093981
Date Processed: 08/05/2015

| | |
|---|---|
| **Primary Contact:** | Rocky Robins<br>Big Lots, Inc.<br>300 Phillipi Road<br>Columbus, OH 43228 |
| **Copy of transmittal only provided to:** | Shelly Persang<br>Rhonda Allton<br>Quinn Dorgan<br>Nicole Rodgers<br>Joe Heuer |
| **Entity:** | Big Lots Stores, Inc.<br>Entity ID Number 1700639 |
| **Entity Served:** | Big Lots Stores Inc |
| **Title of Action:** | Shaundrenika Robrinzine vs. Big Lots Stores, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Cook County Circuit Court, Illinois |
| **Case/Reference No:** | 2015CH11064 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 08/04/2015 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | John G. Albanese<br>612-256-3200 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

To avoid potential delay, please do not send your response to CSC
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

| 2220 - Not Served | 2221 - Not Served | |
|---|---|---|
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-75M-2/28/05 (43480658) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _CHANCERY_ DIVISION

(Name all parties)

Shaundrenika Robrinzine, individually and as a representative of the classes

v.

Big Lots Stores INC

No. 2015CH11064
CALENDAR/ROOM 03
TIME 00:00
Class Action

**SUMMONS**

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☒ Richard J. Daley Center, 50 W. Washington, Room _802 chancery_ Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _59407_
Name: _John G. Albanese_
Atty. for: _Plaintiff_
Address: _Nichols Kaster, PLLP, 4600 IDS Ctr, 80 S. 8th St_
City/State/Zip: _Minneapolis, MN 55402_
Telephone: _612-256-3288_

WITNESS, _____

_Dorothy Brown_
Clerk of Court

Date of service: **DOROTHY BROWN JUL 2 1 2015**
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code) (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ORIGINAL - COURT FILE

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT
CHANCERY DIVISION - GENERAL SECTION

| | |
|---|---|
| SHAUNDRENIKA ROBRINZINE, individually and as a representative of the classes,<br><br>Plaintiff,<br><br>v.<br><br>BIG LOTS STORES, INC.,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Shaundrenika Robrinzine ("Plaintiff"), by and through her attorneys, on behalf of herself and the classes set forth below, brings the following Class Action Complaint against Big Lots Stores, Inc. ("Defendant").

## INTRODUCTION

1. This consumer class action is brought under the Fair Credit Reporting Act ("FCRA") against a company who routinely and systematically violates the FCRA's basic protections by failing to provide required disclosures or to obtain written authorization prior to procuring background reports on applicants and employees.

2. As Defendant's practices were routine and systematic, Plaintiff asserts claims for damages on behalf of herself and two classes of similarly situated individuals on whom Defendant caused a consumer report to be procured without first providing required disclosures or obtaining written authorization.

## THE PARTIES

3. Plaintiff Shaundrenika Robrinzine is an adult resident of Chicago, Illinois (Cook County).

1

4. Defendant Big Lots Stores, Inc. is a corporation operating Big Lots store locations throughout the United States, including in this County. Defendant is incorporated and headquartered in Ohio.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p which allows claims under the FCRA to be brought in any court of competent jurisdiction.

6. This Court has jurisdiction over Plaintiff's claims and personal jurisdiction over Defendant pursuant to the Illinois Code of Civil Procedure because Defendant does business within this state, transacts business within this state, employed individuals within this state, and the events or omissions giving rise to this claim occurred in this state.

7. Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because Plaintiff applied to work for Defendant in this County, and the claims arise from this transaction.

8. Venue is further proper in this Division pursuant to Circuit Court of Cook County General Order No. 1.2, 2.1(b) because this is a class action.

## STATUTORY BACKGROUND

9. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: First, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

10. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

11. Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes. *See* 15 U.S.C. § 1681a(d)(1)(B).

12. Through the FCRA, Congress required employers to, before procuring a consumer report, obtain the written authorization of the subject of the report. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

13. The written authorization provision of the FCRA is critical to ensuring consumer privacy.

14. Through the FCRA, Congress also required employers disclose that a consumer report may be obtained for employment purposes before procuring the report. 15 U.S.C. § 1681b(b)(2)(A)(i).

15. Specifically, Congress made it unlawful for an employer or prospective employer to "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless …a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added). This requirement is frequently referred to as the "stand-alone disclosure requirement."

16. Many other provisions of the FCRA are also notice provisions. *See* 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse employment action notice requirement); § 1681b(4)(B) (notification of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681d(a) (disclosure of investigative report); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions of disclosure); § 1681m(a) (notice of adverse action).

3

17. Like the other notice provisions in the FCRA, the stand-alone disclosure provision puts consumers on notice that a report about them may be prepared. This knowledge enables consumers to exercise a variety of other substantive rights conferred by the statute, many of which work to ensure accuracy, confidentiality, and fairness. 15 U.S.C. § 1681c(a) (limiting temporal scope of information that can be reported); § 1681e(b) (mandating that consumer reporting agencies employ procedures to ensure "maximum possible accuracy" in reports); § 1681k (requiring consumer reporting agencies that report public record information to employers to either provide notice to the consumer that information is being reported or have "strict procedures" to ensure that information is "complete and up to date"); § 1681i (requiring that consumer reporting agencies investigate any disputed information); § 1681g (requiring that consumer reporting agencies provide a complete copy of the consumer's file to the consumer).

18. Without a clear notice that a consumer report is going to be procured on them, and without requiring them to provide written authorization, applicants are hindered in their ability to preserve their privacy, and to correct errors or other problems with the reports.

19. As discussed below, Defendant routinely violated the FCRA, and consumers' rights, by failing to provide the required stand-alone disclosure before procuring consumer reports for employment purposes and by failing to obtain written authorization.

## ALLEGATIONS RELATING TO PLAINTIFF

20. On or around March 5, 2014, Plaintiff applied to work as an overnight stocker at Defendant's Homewood, IL location. (Ex. 1.)

21. Plaintiff completed Defendant's form job application, which did not authorize the procurement of a consumer report (i.e., the running of a background check). Rather, it merely stated:

4

> I understand that Big Lots may contact the past employers and/or personal references I have provided in order to verify my past employment and work record. I authorize all past employers, educational institutions, government agencies and/or personal references to release any and all information concerning my past employment work history, performance, and personal character. I hereby release all such employers, personal references, and Big Lots from any and all liability resulting from damages I may incur in the reference verification process. I understand that my employment or continued employment is also contingent upon my successfully completing both reference and background checks

(Id.)

22. Exhibit 1 is the only document Plaintiff received from Defendant which referenced background checks in any way before a background check was run.

23. While the application mentioned background checks, it only purported to obtain Plaintiff's authorization for Defendant to conduct its own reference check and for the listed entities to provide information to Defendant. It did not authorize Defendant to procure a consumer report from a third party consumer reporting agency.

24. Throughout the two years preceding the filing of this Complaint, however, Defendant has routinely procured consumer reports from Sterling Infosystems, Inc. ("Sterling") on applicants.

25. Sterling is a consumer reporting agency because it sells background reports for employment purposes.

26. On or around March 18, 2014, Defendant procured a consumer report on Plaintiff from Sterling. (Ex. 2.)

27. However, Defendant did not obtain the required written authorization *before* procuring a consumer report on Plaintiff.

28. Rather, on or around April 1, 2014, after Defendant had already procured a consumer report on Plaintiff, Defendant provided Plaintiff with a document titled, "Disclosure and Authorization for Release of Consumer Information" allegedly authorizing Defendant to

5

obtain a consumer report for employment purposes from Sterling. (Ex. 3.)

29. Defendant only provided Plaintiff with Exhibit 3 after Defendant had already procured the consumer report on Plaintiff.

30. Even if it had been provided before Defendant procured the consumer report, the "Disclosure and Authorization" form Defendant provides to applicants violates the FCRA's stand-alone disclosure requirement because it contains extraneous information.

31. For example, over half of the form is comprised of state-specific statements that are not an authorization for Defendant to procure a consumer report and are also not disclosures of the fact that a report may be procured for employment purposes. Rather, these statements are extraneous information that renders any disclosure required under the FCRA not "clear and conspicuous" and also not a document consisting "solely" of the disclosure. Accordingly, the inclusion of these statements on the Disclosure and Authorization violates the FCRA. (Ex. 3.)

32. As another example, the form purports to have the signer "authorize, without reservation, any law enforcement agency, administrator, state or federal agency, institution, school or university (public or private), information service bureau, employer, or insurance company to furnish any and all background information requested by the CRA [Sterling] and/or the Company itself." This blanket authorization is not merely an authorization for Defendant to procure a consumer report; rather it purports to authorize far more than just the procurement of a consumer report. Moreover, the blanket authorization is not a disclosure of the fact that a report may be procured for employment purposes. Accordingly, the blanket authorization constitutes extraneous information that renders any disclosure required under the FCRA not "clear and conspicuous" and also not a document consisting "solely" of the disclosure. Consequently, the inclusion of the blanket authorization on the Disclosure and Authorization violates the FCRA. (Ex. 3.)

6

33. Further, Defendant's form application, which Plaintiff completed, contains equally broad authorizations and a statement that purports to release Defendant and any and all entities referenced in the statement from liability, as well as containing other form application inquiries and directions. (Ex. 1.) None of this is a mere authorization for Defendant to procure a consumer report or a stand-alone disclosure of the fact that a report may be procured for employment purposes. Accordingly, the application does not constitute the stand-alone disclosure required under the FCRA.

## ALLEGATIONS RELATING TO DEFENDANT'S PRACTICES

34. The text of the FCRA is pellucid and clear. Defendant is required to obtain written authorization and provide a disclosure in a document consisting solely of the disclosure before procuring consumer reports. Defendant does neither. Rather, Defendant provides an authorization and disclosure only after it has procured the consumer report. This violates the FCRA's plain language.

35. Moreover, the disclosure Defendant does provide is not compliant with the FCRA's plain language because it includes, *inter alia*, extraneous information. Numerous courts have found the inclusion of this kind of information to violate the FCRA. *See, e.g., Moore v. Rite Aid Hdqtrs Corp.*, No. CIV.A. 13-1515, 2015 U.S. Dist. LEXIS 69747, at *35 (E.D. Pa. May 29, 2015) ("[T]he text of the statute and the available agency guidance demonstrate[] that the inclusion of information on the form apart from the disclosure and related authorization violates § 1681b(b)(2)(A)."); *Lengel v. HomeAdvisor, Inc.*, No. 15-2198-RDR, ___ F. Supp. 3d ___, 2015 U.S. Dist. LEXIS 59017, at *21 (D. Kan. May 6, 2015) ("[I]t may be plausibly asserted that the standalone disclosure provision was recklessly violated by the use of the Release form because it did not consist solely of the disclosure that a consumer report may be obtained for employment purposes."); *Speer v. Whole Food Mkt. Grp., Inc.*, No. 8:14-CV-3035-

7

T-26TBM, 2015 U.S. Dist. LEXIS 40462, at *7 (M.D. Fla. Mar. 30, 2015) (finding that plaintiff had stated a claim wherein plaintiff alleged that "the inclusion of the waiver along with the disclosure violated the FCRA"); *Milbourne v. JRK Residential Am., LLC,* ___ F. Supp. 3d ___, No. 3:12-cv-861, 2015 U.S. Dist. LEXIS 29905, at *15 (E.D. Va. Mar. 10, 2015) ("Thus, judging by the text of the statute alone, inclusion of a waiver within the document containing the disclosure would violate [the FCRA]."); *Dunford v. American Databank, Inc.,* No. C 13-03829, ___ F. Supp. 3d ___, 2014 U.S. Dist. LEXIS 111761, at *23 (N.D. Cal. Aug. 12, 2014) (finding document that contained a liability release to "not consist solely of the disclosure because it added a paragraph exonerating [the defendant]"); *Avila v. NOW Health Grp., Inc.,* No. 14 C 1551, 2014 U.S. Dist. LEXIS 99178, at *6 (N.D. Ill. July 17, 2014) (finding inclusion of liability waivers to be "contrary to the express language of the FCRA, which requires a disclosure 'in a document that consists solely of the disclosure'"); *Singleton v. Domino's Pizza, LLC,* No. 12-cv-823, 2012 U.S. Dist. LEXIS 8626, at *33 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Reardon v. Closetmaid Corp.,* No. 2:-8-cv-01730, 2013 U.S. Dist. LEXIS 169821, at *32 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Jones v. Halstead Mgmt. Co., LLC,* ___ F. Supp. 3d ___, No. 14-CV-3125 VEC, 2015 U.S. Dist. LEXIS 12807, at *18 (S.D.N.Y. Jan. 27, 2015) (finding disclosure to not stand-alone when it included "information regarding time frames within which the applicant must challenge the accuracy of any report; an acknowledgement that 'all employment decisions are based on legitimate non-discriminatory reasons;' . . . and all sorts of state-specific disclosures"); *Miller v. Quest Diagnostics,* No. 2:14-cv-4278, ___ F. Supp. 3d ___, 2015 U.S. Dist. LEXIS 18552, at *7 (W.D. Mo. Jan. 28, 2015) (finding "inclusion of the state-mandated consumer report information,

8

administrative sections, *and* release language in the disclosure violates 15 U.S.C. § 1681b(b)(2)"); *see also E.E.O.C. v. Video Only, Inc.*, No. CIV. 06-1362-KI, 2008 U.S. Dist. LEXIS 46094, at *28 (D. Or. June 11, 2008) (granting summary judgment against the defendant-employer who made disclosure "as part of its job application which is not a document consisting solely of the disclosure.").

36. Similarly, the FTC has warned employers that "the FCRA requires an employer who plans to obtain consumer report for employment purposes . . . to obtain the consumer's written authorization *before* procuring the report." *Letter from Ronald Isaac, Fed. Trade Comm'n, to Michael C. Brisch, Vinson & Elkins* (June 11, 1998) (emphasis added) (Ex. 4).

37. Defendant knew that it had an obligation to provide a stand-alone disclosure and obtain the consumer's authorization before procuring a consumer report.

38. The FCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure and authorization requirements. *See* 15 U.S.C. § 1681b(b)(1).

39. In accordance with their standard procedures, the consumer reporting agencies from which Defendant acquired consumer reports during the two years preceding the filing of this Complaint, including Sterling, required Defendant to certify that it would comply with the stand-alone disclosure provisions of the FCRA.

40. Before procuring Plaintiff's report, Defendant did, in fact, certify to Sterling and other consumer reporting agencies that it would comply with the stand-alone disclosure and authorization provisions of the FCRA.

41. In its contract with Sterling, Defendant also agreed that before obtaining a consumer report, Defendant would provide a disclosure in writing to the consumer that a consumer report will be obtained for employment purposes, that such disclosure will be made in

a document consisting solely of the disclosure, and that Defendant would obtain the consumer's written authorization to procure a consumer report..

42. Defendant did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

43. By systematically inserting extraneous information into Plaintiff's and other class members' disclosures, and by systematically failing to obtain written authorization to procure consumer reports, Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A).

44. Plaintiff experienced a concrete injury in the form of being deprived of a disclosure to which she was statutorily entitled as a result of Defendant's failure to comply with the FCRA's stand-alone disclosure requirement.

45. Plaintiff also experienced a concrete injury in the form of her privacy being invaded by Defendant's procurement of a consumer report on her without her written authorization.

## CLASS ACTION ALLEGATIONS

46. Plaintiff asserts a claim on behalf of the "Disclosure Class" defined as follows:

All individuals on whom Defendant obtained a consumer report for employment purposes in the two years predating the filing of this Complaint and continuing through the date the class list is prepared.

47. Plaintiff asserts a claim on behalf of the "Authorization Class" defined as follows:

All individuals on whom Defendant procured a consumer report for employment purposes without obtaining the written authorization of the subject of the report in the two years predating the filing of this Complaint and continuing through the date the class list is prepared.

48. <u>Numerosity</u>: The classes are so numerous that joinder of all class members is

10

impracticable. Defendant employs thousands of workers, many of whom are members of the classes.

49. <u>Commonality and Predominance</u>: Common questions of law and fact exist as to all members of the classes and predominate over any questions solely affecting individual members of the classes.

50. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the classes, and has retained counsel experienced in complex class action litigation.

51. <u>Appropriate method for fair and efficient adjudication of the controversy</u>: Class certification is appropriate under 735 ILCS 5/2-801 because questions of law and fact common to the classes predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the classes on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## CLAIMS FOR RELIEF

### COUNT I
*Failure to Provide a Stand-alone Disclosure*
**15 U.S.C. 1681b(b)(2)(A)(i)**
**(On Behalf of Plaintiff and the Disclosure Class)**

52. Defendant violated the FCRA by procuring consumer reports on Plaintiff and Disclosure Class members without making the stand-alone disclosure required by the FCRA. *See* 15 U.S.C. § 1681b(b)(2).

53. Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other Disclosure Class members.

54. Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2), and that Defendant certified that it would comply with 15 U.S.C. § 1681b(b)(2).

55. Defendant's willful conduct is still further reflected by the following:

(a) The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

(b) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c) Defendant repeatedly and routinely uses the same unlawful documents with all of its employees on whom it procured consumer reports or otherwise failed to provide them with the required stand-alone disclosure;

(d) Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of*

12

    *the disclosure*, that a consumer report may be obtained for employment purposes; and

  (e) By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

56. Plaintiff and the Disclosure Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the Disclosure Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the Disclosure Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT II
### *Failure to Obtain Written Authorization Before Procuring Consumer Report*
### 15 U.S.C. 1681b(b)(2)(A)(ii)
### (On Behalf of Plaintiff and the Authorization Class)

57. Defendant violated the FCRA by procuring consumer reports on Plaintiff and Authorization Class members without first obtaining the written authorization of the subject of the report. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

58. In fact, Defendant's standard practice is to provide only the application form prior to procuring a consumer report on applicants and then to provide its Disclosure and Authorization form only after procuring the report.

59. Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other Authorization Class members. Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)(A)(ii), and that Defendant certified that it would comply with

13

15 U.S.C. § 1681b(b)(2)(A)(ii). Further:

    (a)    The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

    (b)    Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    (c)    Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer reports for employment purposes without first obtaining the consumer written authorization; and

    (d)    By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

60.    Plaintiff and the Authorization Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the Authorization Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the Authorization Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

61.    WHEREFORE, Plaintiff, on behalf of herself and the classes, prays for relief as follows:

    a.    Determining that this action may proceed as a class action under 735 ILCS 5/2-801 of the Illinois Code of Civil Procedure;

    b.    Designating Plaintiff as Class Representative and designating Plaintiff's counsel

        as counsel for the classes;

c.    Issuing proper notice to the class at Defendant's expense;

d.    Declaring that Defendant violated the FCRA;

e.    Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f.    Awarding statutory damages as provided by the FCRA;

g.    Awarding punitive damages as provided by the FCRA;

h.    Awarding reasonable attorneys' fees and costs as provided by the FCRA;

i.    Granting all other available relief, in law and in equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

62.    Pursuant to 735 ILCS 5/2-1105, Plaintiff and the classes demand a trial by jury.

Date: July 20, 2015

*[signature]*

NICHOLS KASTER, PLLP
John G. Albanese, IL Bar No. 6308461
E. Michelle Drake, MN Bar No. 0387366*
Anna P. Prakash, MN Bar No. 0351362*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
jalbanese@nka.com
drake@nka.com
aprakash@nka.com

*pro hac vice* applications forthcoming

**ATTORNEYS FOR PLAINTIFF**

15