# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SHAUNDRENIKA ROBRINZINE, ) <br> individually and as a representative ) <br> of the class, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BIG LOTS STORES, INC., ) <br> ) <br> Defendant. ) | No. 15-CV-7239 <br><br> Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Big Lots, Inc. ("Big Lots") has moved the Court to dismiss Plaintiff Shaundrenika Robrinzine's ("Robrinzine") First Amended Complaint (the "Complaint") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Defendant's motion to dismiss.

## STATEMENT

On August 18, 2015, Big Lots removed the underlying case, *Shaundrenika Robrinzine v. Big Lots Stores, Inc.*, Case No. 15-CH-11064, from the Circuit Court of Cook County to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (R. 1.) On September 3, 2015, Ms. Robrinzine filed the one-count Complaint, alleging, in relevant part, that Big Lots violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2).[1] (R. 16.) Specifically, Ms. Robrinzine alleges that Big Lots "violated the FCRA by procuring consumer reports on Plaintiff

---
[1] This Court has jurisdiction to hear the current case under 28 U.S.C. § 1331, which "grants district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Evergreen Square of Cudahy v. Wis. Hous. and Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) (quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013)). "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Id*.

and Class members without making the stand-alone disclosure required by the FCRA." (*Id*. at ¶56.) Further, Ms. Robrinzine contends that Big Lots "acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other Class members." (*Id*. at ¶57.) Big Lots disagrees. Instead, argues Big Lots, this Court should dismiss Ms. Robrinzine's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Big Lots's motion to dismiss.

## BACKGROUND

The following facts are taken from the Complaint. (R. 16.) In evaluating the motion to dismiss, the Court accepts as true the Complaint's well-pleaded factual allegations and draws all reasonable inferences in favor of Plaintiff. *See Stayart v. Yahoo!, Inc.*, 623 F.3d 436, 438 (7th Cir. 2010).

### I. Ms. Robrinzine's Employment Application

Ms. Robrinzine is an adult resident of Cook County in Chicago, Illinois. (R. 16 at ¶3.) Big Lots is a corporation, incorporated and headquartered in Ohio, "operating Big Lots store locations throughout the United States, including in Cook County." (*Id*. at ¶4.) Sterling Infosystems, Inc. ("Sterling") is a third-party "consumer reporting agency" that Big Lots utilizes to procure employment applicants' consumer reports. (*Id*. at ¶¶18-19.)

On or around March 5, 2014, Ms. Robrinzine applied to work as an overnight stocker for Big Lots's Homewood, Illinois facility. (*Id*. at ¶29; Ex. 2.) Subsequently, Big Lots issued Ms. Robrinzine a "Consent to Request Consumer Report & Investigative Consumer Report Information" form ("the Consent Form") through Sterling. (*Id*. at ¶30.) Ms. Robrinzine signed and returned this form on March 18, 2014. (*Id*.) On or around that same day, Big Lots procured Ms. Robrinzine's consumer report through Sterling. (*Id*. at ¶31; Ex. 3.)

2

## II. The FCRA's Stand-Alone Disclosure Requirement

Now, Ms. Robrinzine alleges that the Disclosure Form violates 15 U.S.C. § 1681b(b)(2) of the FCRA. The FCRA, in relevant part, provides:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless—
>
> (i) A clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) The consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

(*Id*. at ¶24, citing 15 U.S.C. § 1681b(b)(2)(A).) Specifically, Ms. Robrinzine contends that the Consent Form "is not a stand-alone disclosure and does not comply with the requirements of §1681b(b)(2)," as it does not "consist solely of the disclosure[] that a consumer report may be obtained for employment purposes." (*Id*. at ¶21; 15 U.S.C. § 1681b(b)(2)(a).) Instead, alleges Ms. Robrinzine, "the form contains extraneous information," such as an "implied liability waiver," "over a full page of state-specific notices," and "information on how background information will be gathered[.]" (*Id*. at ¶¶22, 26-28.)

## III. Big Lots's Consent Form

The Consent Form that Ms. Robrinzine received, signed, and submitted includes the following[2]:

> I understand that "Big Lots" ("COMPANY") will use **Sterling Infosystems ("STERLING"), 6111 Oak Tree Boulevard, Independence, OH 44131, (800) 853-3228** to obtain a consumer report and/or investigative consumer report

---

[2] The Court may consider the Consent Form, as "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (quoting *Menominee Indian Tribe of Wis. V. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998)).

("Report") as part of the hiring process. I also understand that if hired, to the extent permitted by law, COMPANY may obtain further Reports from STERLING so as to update, renew or extend my employment.

I understand Sterling's investigation may include obtaining information regarding my credit background, bankruptcies, lawsuits, judgments, paid tax liens, unlawful detainer actions, failure to pay spousal or child support, accounts placed for collection, character, general reputation, personal characteristics and standard of living, workers compensation (but only after an offer of employment is made), driving record and criminal record, subject to any limitations imposed by applicable federal and state law. I understand such information may be obtained through direct or indirect contact with former employers, schools, financial institutions, landlords and public agencies or other persons who may have such knowledge. If an investigative consumer report is being requested, I understand such information may be obtained throughout any means, including but not limited to personal interviews with my acquaintances and/or associates or with others whom I am acquainted.

The nature and scope of the investigation sought will not exceed: credit background, bankruptcies, lawsuits, judgments, paid tax liens, unlawful detainer actions, failure to pay spousal or child support, accounts placed for collection, character, general reputation, personal characteristics and standard of living, driving record and criminal record, workers compensation (but only after an offer of employment is made).

I acknowledge receipt of the summary of my rights under the Fair Credit Reporting Act and, as required by law, any related state summary of rights (collectively "Summaries of Rights").

This consent will not affect my ability to question or dispute the accuracy of any information contained in a Report. I understand if COMPANY makes a conditional decision to disqualify me based all or in part on my Report, I will be provided with a copy of the Report and another copy of the Summaries of Rights, and if I disagree with the accuracy of the purported disqualifying information in the Report, I must notify COMPANY within five business days of my receipt of the Report that I am challenging the accuracy of such information with Sterling.

I hereby consent to this investigation and authorize COMPANY to procure a Report on my background.

In order to verify my identity for the purposes of Report preparation, I am voluntarily releasing my date of birth, social security number, and the other information and fully understand that all employment decisions are based on legitimate non-discriminatory reasons.

The name, address and telephone number of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report is:

Sterling Infosystems Company, 6111 Oak Tree Boulevard, Independence, OH 44131, 800-853-3228 Option 3.

**California, Maine, Massachusetts, Minnesota, New Jersey & Oklahoma Applicants Only:** I have the right to request a copy of any Report obtained by COMPANY from Sterling by checking the box. (You will be asked to check the box after you click "Submit" at the end of this process)

**California, Connecticut, Maryland, Oregon, Vermont, and Washington State Applicants Only (AS APPLICABLE):** I further understand that COMPANY will not obtain information about my credit history, credit worthiness, credit standing, or credit capacity unless: (i) the information is required by law; (ii) I am seeking employment with a financial institution (California, Connecticut, and Vermont only—in California the financial institution must be subject to Sections 6801-6809 of the U.S. Code and in Vermont it must be a financial institution as defined in 8 V.S.A. §11101(32) or a credit union as defined in 8 V.S.A. §30101(5)); (iii) I am seeking employment with a financial institution that accepts deposits that are insured by a federal agency, or an affiliate or subsidiary of the financial institution or a credit union share guaranty corporation that is approved by the Maryland Commissioner of Financial Regulation or an entity or an affiliate of the entity that is registered as an investment advisor with the United States Securities and Exchange Commission (Maryland only); (iv) I am seeking employment in a position which involves access to confidential information (Vermont only); (v) I am seeking employment in a position which requires a financial fiduciary responsibility to the employer or a client of the employer, including the authority to issue payments, collect debts, transfer money, or enter into contracts (Vermont only); (vi) COMPANY can demonstrate that the information is a valid and reliable predictor of employee performance in the specific position being sought or held; (vii) I am seeking employment in a position that involves access to an employer's payroll information (Vermont only); (viii) **the information is substantially job related, and the bona fide reasons for using the information are disclosed to me in writing** (Connecticut, Maryland, Oregon, and Washington only); (ix) I am seeking employment as a covered law enforcement officer, emergency medical personnel, firefighter police officer, peace officer or other law enforcement position (California, Oregon, and Vermont only—in Oregon the police or peace officer position must be sought with a federally insured bank or credit union and in Vermont the law enforcement officer position must be as defined in 20 V.S.A. §2358, the emergency medical personnel must be as defined in 24 V.S.A. §2651(6), and the firefighter position must be as defined in 20 V.S.A. §3151(3)); (x) the COMPANY reasonably believes I have engaged in specific activity that constitutes a violation of law related to my employment (Connecticut only) (xi) I am seeking a position with the state Department of Justice (California only); (xii) I am seeking a position as

an exempt managerial employee (California only); and/or (xiii)) [sic] I am seeking employment in a position (other than regular solicitation of credit card applications at a retail establishment) that involves regular access to all of the following personal information of any one person: bank or credit card account information, social security number, and date of birth,, [sic] I am seeking employment in a position that requires me to be a named signatory on the employer's bank or credit card or otherwise authorized to enter into financial contracts on behalf of the employer, I am seeking employment in a position that involves access to confidential or proprietary information of the Company or regular access to $10,000 or more in cash (California only).

**NY Applicants Only:** I also acknowledge that I have received the attached copy of Article 23A of New York's Correction Law. I further understand that I may request a copy of any investigative consumer report by contacting Sterling. I further understand that I will be advised if any further checks are requested and provided the name and address of the consumer reporting agency.

**California Applicants and Residents:** If I am applying for employment in California or reside in California, I understand I have the right to visually inspect the files concerning me maintained by an investigative consumer reporting agency during normal business hours and upon reasonable notice. The inspection can be done in person, and, if I appear in person and furnish proper identification; [sic] I am entitled to a copy of the file for a fee not to exceed the actual costs of duplication. I am entitled to be accompanied by one person of my choosing, who shall furnish reasonable identification. The inspection can also be done via certified mail if I make a written request, with proper identification, for copies to be sent to a specified addressee. I can also request a summary of the information to be provided by telephone if I make a written request, with proper identification for telephone disclosure, and the toll charge, if any, for the telephone call is prepaid by or directly charged to me. I further understand that the investigative consumer reporting agency shall provide trained personnel to explain to me any of the information furnished to me; I shall receive from the investigative consumer reporting agency a written explanation of any coded information contained in filed maintained on me. "Proper identification" as used in this paragraph means information generally deemed sufficient to identify a person, including documents such as a valid driver's license, social security account number, military identification card, and credit cards. I understand that I can access the following website—https://smwreports.sterlingdirect.com/privacy/—to view Sterling's privacy practices, including information with respect to Sterling's preparation and processing of investigative consumer reports and guidance as to whether my personal information will be sent outside the United States or its territories.

(R. 16-1, Consent to Request Consumer Report & Investigative Consumer Report Information,

emphasis in original.)

6

**ANALYSIS**

**I.      Rule 12(b)(6) Legal Standard**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Importantly, plaintiffs need not plead the elements of a prima facie case to survive a motion to dismiss. *See Twombly*, 550 U.S. at 569 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Childress v. Walker*, 787 F.3d 433, 440-41 (7th Cir. 2015) ("[A] plaintiff's complaint 'need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . . Specific facts are not necessary[.]'") (quoting *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)). Rather, a complaint simply "must provide enough details

7

about the subject matter of the case to present a story that holds together." *Mehta v. Beaconridge Improvement Ass'n*, 432 Fed. App'x. 614, 616 (7th Cir. 2011) (citing *Erickson*, 551 U.S. at 93). The Court asks "whether the story could have happened, not whether it did." *Id.* (citations omitted). Ultimately, "[a] complaint that invokes a recognized legal theory . . . and contains plausible allegations on the material issues . . . cannot be dismissed under Rule 12." *Mitcheff*, 696 F.3d at 638 (citing *Erickson*, 551 U.S. 89).

Finally, as noted above, the Court may consider any "[d]ocuments attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim." *Adams*, 742 F.3d at 729 (citation omitted).

## II.     Big Lots's Consent Form

Big Lots first argues that the Consent Form, "on its face, complies with the FCRA." In light of the Consent Form's nearly two pages of additional information, however, Ms. Robrinzine sufficiently alleges that it does not.

Section 1681b(b)(2)(a) of the FCRA explicitly prohibits employers from procuring a consumer report—or causing a consumer report to be procured—for employment purposes unless

> a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure[] that a consumer report may be obtained for employment purposes*."

(emphasis added). Courts widely refer to this as the FCRA's "stand alone disclosure" requirement. *See, e.g., Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 332-33 (S.D.N.Y. 2015) ("The statute requires a standalone disclosure; the only extraneous information permitted is an authorization by the consumer to the employer to obtain a consumer report."); *Woods v. Caremark, PHC, L.L.C.*, Civil No. 4:15-cv-00535-SRB, 2015 WL 6742124 (W.D. Mo.

Nov. 2, 2015) ("Plaintiff brings a putative class action under the [FCRA] alleging Defendant willfully violated the FCRA's stand-alone disclosure requirement.") (citing 15 U.S.C. 1681b(b)(2)); *Landrum v. Harris County Emergency Corps*, No. 4:14-CV-1811, 2015 WL 4394010, at *4 (S.D. Tx. July 16, 2015) (Answering "whether the inclusion of a liability of waiver on [Defendant's] Background Check Form contravenes the stand-alone disclosure requirement of §1681b(b)(2)(A)(i)"); *Avila v. NOW Health Group, Inc.*, No. 14 C 1551, 2014 WL 3537825, at *1-2 (N.D. Ill. July 17, 2014). The Court's analysis hinges on its interpretation of the FCRA's stand-alone disclosure requirement and, specifically, the meaning of the word "solely."

Given the FCRA's explicit statutory prohibitions, Ms. Robrinzine has sufficiently stated a claim that Big Lots's Consent Form includes extraneous information that violates the statute's stand-alone disclosure requirement. "When interpreting the meaning of undefined statutory terms, the 'cardinal rule is that words used in statutes must be given their ordinary and plain meaning.'" *United States v. Patel*, 778 F.3d 607, 613 (7th Cir. 2015) (quoting *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000)). "To determine the plain meaning of words, [courts] frequently look to dictionary definitions." *Id*. According to Merriam-Webster's Dictionary, the word "solely" is an adverb meaning "to the exclusion of all else" or "only." *Solely Definition*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/solely (last visited Jan. 11, 2016). The FCRA's stand-alone disclosure requirement does not modify the word "solely." *See Milbourne v. JRK Residential America, LLC*, 92 F. Supp. 3d 425, 432 (E.D. Va. 2015) ("The language of the FCRA does not qualify the word "solely" or otherwise limit its meaning."). Accordingly, to properly procure a consumer report on a potential employee under the FCRA, Big Lots's Consent Form should consist "only" of the disclosure, "to the exclusion of

9

all else." MERRIAM-WEBSTER.COM. It allegedly does not. Specifically, the Consent Form includes an implied liability waiver[3], specific information regarding how consumer information will be collected, and over a page and a half of state-specific exceptions that are inapplicable to Ms. Robrinzine. Thus, the Complaint sufficiently pleads that the Consent Form, on its face, fails to comply with the FCRA-stand-alone disclosure requirement's "ordinary and plain meaning." *Patel*, 778 F.3d at 613.

Facing similar extraneous information, a number of courts have concluded the same. *See, e.g., Groshek v. Great Lakes Higher Ed., Corp.*, 2015 WL 7294548 (W.D. Wis. Nov. 16, 2015) ("A substantial majority of cases that have considered the issue have gone [Plaintiff's] way in concluding that the inclusion of the waiver on the disclosure document is a violation of the FCRA . . . By the terms of the statute, the required conspicuous disclosure about the report must consist *solely* of the disclosure, with the only exception being the consumer's authorization for the report. The statutory language is the end of the analysis when the statutory language is unambiguous as it is here.") (emphasis in original) (citations omitted); *Woods*, 2015 WL 6742124, at *2 ("The specific 'extraneous information' Plaintiff alleges Defendant included in its Authorization Form for Consumer Reports is: 1) an overbroad authorization for third parties to provide information to Defendant and its consumer reporting agency, 2) state-specific notices that did not apply to Plaintiff, and 3) that the form was part of a five-page stapled packet of three documents. Where FCRA allegations involve the inclusion of extraneous information beyond an

---

[3] Ms. Robrinzine alleges that the following language constitutes an "implied liability waiver:" "In order to verify my identity for purposes of Report preparation, I am voluntarily releasing my date of birth, social security number and other information and *fully understand that all employment decisions are based on legitimate non-discriminatory reasons*." (R. 16-1 at 2 (emphasis added).) Big Lots counters that this "is not a release or waiver." (R. 24 at 7.) Whether the relevant language constitutes an implied liability waiver, however, is not determinative. Indeed, Ms. Robrinzine also alleges that the Consent Form includes excess information regarding consumer-information-collection and inapplicable state-specific exceptions that both infringe the FCRA's stand-alone disclosure requirement. Thus, regardless of whether the relevant language is an implied liability waiver, Ms. Robrinzine has adequately pled that the Consent Form included additional information in violation of the FCRA.

authorization, the complaint meets the 12(b)(6) standard to state a claim for willful violation of the FCRA stand-alone requirement."); *Johnson v. Casey's General Stores, Inc.*, No. 6:15-cv-30860-MDH, 2015 WL 4542143, at *3 (W.D. Mo. July 27, 2015) ("Plaintiff claims [Defendant's Authorization Form] falls under the FCRA and violates the stand-alone disclosure requirement. . . . [T]he Court finds Plaintiff's Complaint has sufficiently stated a claim that [Defendant] willfully violated the FCRA's stand-alone requirement and therefore, [Defendant's] Motion to Dismiss is denied."); *Landrum*, 2015 WL 4394010, at *5 ("Principles of statutory construction lead this Court to conclude that the inclusion of a liability waiver as part of a § 1681b(b)(2)(A)-regulated disclosure violates the FCRA."); *Rawlings v. ADS Alliance Data Systems, Inc.*, No. 2:15-cv-04051-NKL, 2015 WL 3866885, at *6 (W.D. Mo. June 23, 2015) ("[Defendant] cites no authority in which dismissal was granted notwithstanding inclusion in a disclosure of consumer protection laws irrelevant to the plaintiff. In this context and at the motion to dismiss stage, the Court finds Rawlings' complaint is sufficient to state a claim that ADS violated the FCRA's stand-alone disclosure requirement."); *Schoebel v. American Integrity Ins. Co. of Florida*, No. 8:15-cv-380-T-24 AEP, 2015 WL 3407895, at *6 (M.D. Fla. May 27, 2015) ("[T]he Court agrees with . . . the line of cases that have found that if the disclosure form contains a [liability] release, there is an FCRA violation."); *Speer v. Whole Foods Market Group, Inc.*, No. 8:14-cv-3035-T-26TBM, 2015 WL 1456981, at *3 (M.D. Fla. March 30, 2015) ("[Plaintiff alleges that] the inclusion of the waiver along with the disclosure violated the FCRA. . . . [W]ith all inferences drawn in favor of Plaintiff, if both the disclosure and the consent forms combined and read as one document with the waiver and release included simultaneously with the disclosure, the complaint states a claim for relief. . . . [T]he complaint withstands dismissal."); *Milbourne*, 92 F. Supp. 3d at 432 ("[J]udging by the text of the statute alone, inclusion of a waiver within the

document containing the disclosure would violate § 1681b(b)(2)(A)(i)."); *Lengel v. HomeAdvisor, Inc.*, 102 F. Supp. 3d 1202, 1210 (D. Kan. 2015) ("[The release] statements are arguably quite unrelated to a disclosure that a consumer report may be obtained for employment purposes. Thus, plaintiff has plausibly alleged that the statements in the Release form recklessly violate the standalone disclosure provisions of the FCRA."); *Avila*, 2014 WL 3537825, at *2 ("The form, however, also contains a release of liability or claims that [Plaintiff] might have arising from the consumer report and any information contained in it. Thus, despite NOW's assertion that both forms comply with the FCRA stand alone disclosure requirement, each form contains information that is not the disclosure, contrary to the express language of the FCRA. . . . At the motion to dismiss stage, where all inferences are made in favor of the nonmovant, the Court is unwilling to conclude that [Plaintiff] has not stated a claim.").

The Court is not persuaded by Big Lots's arguments to the contrary. Big Lots first argues that the Consent Form "contains clear, conspicuous language advising Plaintiff that Big Lots might obtain a consumer report for employment purposes." (R. 24 at 2.) The FCRA's language, however, includes a conjunctive pair of requirements: the disclosure must be both 1) "clear and conspicuous" and 2) "made in writing . . . in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). Limiting the litmus test to simply the former requirement "has the effect of excising the 'solely of the disclosure' language from the FCRA's text." *Milbourne*, 92 F. Supp. 3d at 433. Ignoring the statutory text and its "ordinary and plain meaning" would be antithetical to the "cardinal rule" of statutory interpretation. *Patel*, 778 F.3d at 613. Thus, Big Lots's arguments revolving around the first requirement fail to address Ms. Robrinzine's allegations regarding the second.

Big Lots next focuses on the FCRA's purpose rather than the text, contending that the stand-alone requirement is simply meant to prevent extra information from "distracting" consumers. (R. 24 at 6-8, citing *Smith v. Waverly Partners, LLC*, No. 3:10-cv-00028-RLV-DSC, 2012 WL 3645324, at *6 (W.D.N.C. Aug. 23, 2012).) Both *Waverly Partners* and *Burghy v. Dayton Racquet Club*, on which Big Lots also relies, adopt this approach and find that additional report information conform to the stand-alone requirement. 695 F. Supp. 2d 689, 699 (S.D. Ohio 2010). Both of these opinions ruled on motions for summary judgment. In addition, the disclosure forms in *Waverly Partners* only included a liability waiver. Here, Ms. Robrinzine alleges that Big Lots's Consent Form included a liability waiver, excess information regarding consumer information collection, and inapplicable state-specific exclusions. Furthermore, the court in *Waverly Partners* did not focus its ruling on the text of the statute, thus contradicting the rules of statutory construction. Moreover, the *Burghy* court primarily focused on whether the disclosure was sufficiently "conspicuous." It addressed the statute's "consists solely" language in the context of additional authorization information, not the extensive information alleged in this case. Accordingly, Big Lots's reliance on these cases is misplaced.

Finally, Big Lots argues that reading "solely," literally, "defies common sense," arguing that "[i]f Congress had intended that an employer provide a document with only nine words . . . Congress could have and would have said so." (R. 24 at 6.) The Court, however, interprets Congress's silence differently. Indeed, in light of § 1681b(b)(2)(A)(ii), which allows a consumer authorization to be included with the disclosure, Congress illustrated that it knew exactly how to include exceptions to the stand-alone disclosure requirement. Instead, Congress included none that cover the additional information from which the Consent Form allegedly suffers. Thus, the Complaint survives.

13

**III. Knowledgeable or Reckless Indifference**

Big Lots also argues that Ms. Robinzine's claim "fails for failure to state a claim for a willful violation of the FCRA." (R. 24 at 9.) Given Ms. Robinzine's alleged facts, however, Big Lots's argument is unconvincing.

Ms. Robinzine seeks statutory damages, punitive damages, and attorneys' fees. (R. 16 at ¶60.) Under §1681n(a)(1)(A) of the FCRA, Ms. Robinzine must successfully allege that Big Lots "willfully fail[ed] to comply with any requirement imposed under this subchapter" to recover such damages. "Willfulness may be established by showing that the defendant knew that its actions violated an FCRA requirement or acted in reckless disregard as to whether its actions violated an FCRA requirement." *Taylor v. Screening Reports, Inc.*, No. 13 C 02886, 2015 WL 4052824, at *6 (N.D. Ill. July 2, 2015) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57, 127 S. Ct. 2201, 167 L.Ed.2d 1045 (2007) ("[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." ). "Thus, to either knowingly or recklessly violate an FCRA requirement, a defendant must have been aware of the requirement at the time of the challenged conduct." *Id*. "This standard . . . is objective." *Murray v. New Cingular Wireless Services, Inc.*, 523 F.3d 719, 726 (7th Cir. 2008).

Here, the Complaint alleges that Big Lots "knew that it had an obligation to provide a stand-alone disclosure." (R. 16 at ¶42.) Specifically, Ms. Robinzine alleges that "[t]he FCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure and authorization requirements." (*Id*. at ¶43, citing 15 U.S.C. § 1681b(b)(1).) "Before procuring Plaintiff's

report," Ms. Robrinzine pleads, "Defendant did, in fact, certify to Sterling and other consumer reporting agencies that it would comply with the stand-alone disclosure and authorization provisions of the FCRA." (*Id*. at ¶45.) Ms. Robrinzine concludes that "[b]y systematically inserting extraneous information into Plaintiff's and other class members' disclosures, Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A)." (*Id* at ¶48.) In all, Ms. Robrinzine includes at least ten paragraphs of facts alleging that Big Lots acted willfully. (*Id*. at 11-14.)

Big Lots challenges the Complaint's willfulness allegations, claiming that "merely alleging that a defendant should be aware of a statute and fails to comply with it . . . is insufficient to state a claims for willfulness." (R. 24 at 11.) Ms. Robrinzine, however, alleges more. Indeed, the Complaint alleges that Big Lots *was* aware of the stand-alone disclosure requirement, not that it "should be." As a result, considering the facts as alleged and in the light most favorable to Ms. Robrinzine, the Complaint illustrates that Big Lots was aware of the requirement and did not adhere to it. Thus, the Complaint adequately alleges that Big Lots's violation was willful, surviving the motion to dismiss. *See Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2012 WL 245965, at *4 (D. Md. Jan. 25, 2012) ("[A]ssertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegations of willfulness and to avoid dismissal.") (citing *Kubas v. Standard Parking Corp. IL*, 594 F. Supp. 2d 1029, 1031-32 (N.D. Ill. 2009) (denying a motion to dismiss where a plaintiff alleged that a defendant willfully failed to comply with FACTA after others had informed the defendant of the law's requirements)).

## CONCLUSION

For the foregoing reasons, the Court denies Defendant Big Lots's motion to dismiss.

**DATED: January 19, 2016**  **ENTERED**

_____
AMY J. ST. EVE
U.S. District Court Judge