IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAUNDRENIKA ROBRINZINE, individually and as a representative of the class, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| BIG LOTS STORES, INC., | ) ) |
| Defendant, | ) ) ) |
| v. | ) ) |
| STERLING INFORSYSTEMS, INC., | ) ) |
| Third-Party Defendants. | ) |

No. 15-cv-7239

Hon. Amy J. St. Eve

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Third-Party Defendant Sterling Infosystems, Inc. ("Sterling") has moved the Court to dismiss Defendant and Third-Party Plaintiff, Big Lots's ("Big Lots") Third-Party Complaint pursuant to the doctrine of *forum non conveniens* or, in the alternative, to transfer the case to the Southern District of Ohio, pursuant to 28 U.S.C. § 1404(a). [82]. Sterling also moves to sever and stay the Third-Party Complaint, pursuant to Federal Rules of Civil Procedure 14(a)(4) and 21. [85]. For the following reasons, the Court grants Sterling's motion to dismiss the Third-Party Complaint pursuant to *forum non conveniens* and denies the rest of Sterling's motions as moot.

**BACKGROUND**

The following facts are taken from the Complaint and the Third-Party Complaint. (R. 16, R. 59.) In evaluating the motion to dismiss, the Court accepts as true the Complaint and Third-Party Complaint's well-pleaded factual allegations and draws all reasonable inferences in favor of Plaintiff and Third-Party Plaintiff. *See Stayart v. Yahoo!, Inc.*, 623 F.3d 436, 438 (7th Cir. 2010).

**I.     Ms. Robrinzine's Employment Application**

Ms. Shaundrenika Robrinzine ("Ms. Robrinzine") is an adult resident of Cook County in Chicago, Illinois. (R. 16 at ¶3.) Big Lots is a corporation, incorporated and headquartered in Ohio, "operating Big Lots store locations throughout the United States, including in Cook County." (*Id*. at ¶4.) Sterling Infosystems, Inc. is a third-party "consumer reporting agency" that Big Lots utilizes to procure employment applicants' consumer reports. (*Id*. at ¶¶18-19.)

On or around March 5, 2014, Ms. Robrinzine applied to work as an overnight stocker for Big Lots's Homewood, Illinois facility. (*Id*. at ¶29; Ex. 2.) Subsequently, Big Lots issued Ms. Robrinzine a "Consent to Request Consumer Report & Investigative Consumer Report Information" form ("the Consent Form") through Sterling. (*Id*. at ¶30.) Ms. Robrinzine signed and returned this form on March 18, 2014. (*Id*.) On or around that same day, Big Lots procured Ms. Robrinzine's consumer report through Sterling. (*Id*. at ¶31; Ex. 3.)

**II.    The FCRA's Stand-Alone Disclosure Requirement**

Ms. Robrinzine alleges that the Disclosure Form violates 15 U.S.C. § 1681b(b)(2) of the FCRA. The FCRA, in relevant part, provides:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless—

>   (i)  A clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
>   (ii) The consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

(*Id*. at ¶24, citing 15 U.S.C. § 1681b(b)(2)(A).) Specifically, Ms. Robrinzine contends that the Consent Form "is not a stand-alone disclosure and does not comply with the requirements of §1681b(b)(2)," as it does not "consist solely of the disclosure[] that a consumer report may be obtained for employment purposes." (*Id*. at ¶21; 15 U.S.C. § 1681b(b)(2)(a).) Instead, alleges Ms. Robrinzine, "the form contains extraneous information," such as an "implied liability waiver," "over a full page of state-specific notices," and "information on how background information will be gathered[.]" (*Id*. at ¶¶22, 26-28.)

### III. Big Lots's Consent Form

The Consent Form that Ms. Robrinzine received, signed, and submitted includes, in relevant part, the following[1]:

> I understand that "Big Lots" ("COMPANY") will use **Sterling Infosystems ("STERLING"), 6111 Oak Tree Boulevard, Independence, OH 44131, (800) 853-3228** to obtain a consumer report and/or investigative consumer report ("Report") as part of the hiring process. I also understand that if hired, to the extent permitted by law, COMPANY may obtain further Reports from STERLING so as to update, renew or extend my employment.
>
> I understand Sterling's investigation may include obtaining information regarding my credit background, bankruptcies, lawsuits, judgments, paid tax liens, unlawful detainer actions, failure to pay spousal or child support, accounts placed for collection, character, general reputation, personal characteristics and standard of living, workers compensation (but only after an offer of employment is made), driving record and criminal record, subject to any limitations imposed by

---

[1] The Court may consider the Consent Form, as "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (quoting *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998)).

applicable federal and state law. I understand such information may be obtained through direct or indirect contact with former employers, schools, financial institutions, landlords and public agencies or other persons who may have such knowledge. If an investigative consumer report is being requested, I understand such information may be obtained throughout any means, including but not limited to personal interviews with my acquaintances and/or associates or with others whom I am acquainted.

The nature and scope of the investigation sought will not exceed: credit background, bankruptcies, lawsuits, judgments, paid tax liens, unlawful detainer actions, failure to pay spousal or child support, accounts placed for collection, character, general reputation, personal characteristics and standard of living, driving record and criminal record, workers compensation (but only after an offer of employment is made).

I acknowledge receipt of the summary of my rights under the Fair Credit Reporting Act and, as required by law, any related state summary of rights (collectively "Summaries of Rights").

This consent will not affect my ability to question or dispute the accuracy of any information contained in a Report. I understand if COMPANY makes a conditional decision to disqualify me based all or in part on my Report, I will be provided with a copy of the Report and another copy of the Summaries of Rights, and if I disagree with the accuracy of the purported disqualifying information in the Report, I must notify COMPANY within five business days of my receipt of the Report that I am challenging the accuracy of such information with Sterling.

I hereby consent to this investigation and authorize COMPANY to procure a Report on my background.

In order to verify my identity for the purposes of Report preparation, I am voluntarily releasing my date of birth, social security number, and the other information and fully understand that all employment decisions are based on legitimate non-discriminatory reasons.

The name, address and telephone number of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report is:

Sterling Infosystems Company, 6111 Oak Tree Boulevard, Independence, OH 44131, 800-853-3228 Option 3.

(R. 16-1, Consent to Request Consumer Report & Investigative Consumer Report Information, emphasis in original.)

## IV. The Agreement Between Big Lots and Sterling

On February 9, 2016, Big Lots filed the two-count Third-Party Complaint against Sterling. (R. 59, Third-Party Complaint.) Specifically, "[i]n February 2013, Big Lots and Sterling entered into a Service Agreement (the "Agreement"), under which Sterling agreed to provide Big Lots with, *inter alia*, 'employment screening services' to be performed 'in a timely and accurate manner consistent with that of a professional employment screening agency.'" (R. 59, Third-Party Complaint, at 3; R. 59-1, Service Agreement.) Big Lots "engaged with Sterling to provide certain services, including conducting background searches on prospective employees and providing the Consent Form to be given to prospective employees before such searches were conducted." (*Id*. at 2.) The Agreement, in relevant part, provided the following forum selection clause[2]:

> [t]his Agreement shall be governed by the laws of the State of Ohio. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns. Any controversy or claim of any nature, arising out of or relating or referring in any way to this Agreement or its breach, which controversy or claim cannot be amicably resolved, shall be settled in a court of competent jurisdiction in the State of Ohio. Each party consents and agrees to submit to the exclusive jurisdiction of said court and that Franklin County Ohio shall be designated as the venue for the resolution of any claim arising hereunder.

(R. 59-1, Agreement, at 3–4.) In Count One of the Third-Party Complaint, Big Lots asserts that "[i]f [Ms. Robrinzine's] allegations are correct . . . Sterling was negligent in providing Big Lots with a Consent Form that failed to comply with the FCRA." (R. 59, Third-Party Complaint, at 6.) Thus, Big Lots seeks "indemnification and defense" from Sterling. (*Id*.) In Count Two, Big Lots alleges that "if [Ms. Robrinzine's] allegations are correct . . . then Sterling breached the Agreement by failing to provide Big Lots with a Consent Form that complied with the FCRA, as

---

[2] The Court may consider the Service Agreement, as Big Lots attaches and refers to the Agreement throughout its Third-Party Complaint. *See Adams*, 742 F.3d at 729 (7th Cir. 2014) (citation omitted).

5

FCRA compliance is one of the essential services of a professional employment screening agency." (*Id*. at 7.)

Now, Sterling moves the Court to dismiss the Third-Party Complaint pursuant to the doctrine of *forum non conveniens* or, in the alternative, to transfer the case, pursuant to 28 U.S.C. § 1404(a). In addition, Sterling moves the Court to sever and stay the Third-Party Complaint, pursuant to Federal Rules of Civil Procedure 14(a)(4) and 21. The Court grants Sterling's motion to dismiss the Third-Party Complaint pursuant to *forum non conveniens* and denies Sterling's remaining motions as moot.

## ANALYSIS

Sterling seeks to enforce the agreed upon forum selection clause as the basis for dismissing the Third-Party Complaint pursuant to *forum non conveniens*. (R. 82, R. 102.) As such, the Court's analysis hinges on the clause. *Atlantic Marine Const. Co., Inc.* is instructive on this issue. There, the United States Supreme Court held that

> the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*. Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer. *See Sinochem Int'l. Co. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) ("For the federal court system, Congress has codified the doctrine . . ."); *see also* notes following § 1404 (Historical and Revision Notes) (Section 1404(a) "was drafted in accordance with the doctrine of *forum non conveniens*, permitting transfer to a more convenient forum, even though the venue is proper"). For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* "has continuing application in federal courts." *Sinochem*, 549 U.S. at 430 (internal quotation marks and brackets omitted); *see also ibid.* (noting that federal courts invoke *forum non conveniens* "in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial courts serves litigational convenience best" (internal quotation marks and citation omitted)).

*Atlantic Marine Const. Co., Inc. v. United States Dist. Court for the Western Dist. of Texas*, 134 S. Ct. 568, 580, 187 L. Ed. 2d 487 (2013); *see also Professional LED Lighting, Ltd. v. Aadyn Tech., LLC*, No. 14-cv-2440, 2014 WL 6613012, at *7–8 (N.D. Ill. Nov. 21, 2014) (citing *Atlantic Marine Const. Co., Inc.*, 134 S. Ct. 568). Accordingly, the Court must parse the language of the forum-selection clause.

## I. Validity and Scope of Forum Selection Clause

As noted earlier, Sterling and Big Lots signed a Service Agreement in February 2013. The Agreement included an agreed upon forum-selection clause, stating,

> [t]his Agreement shall be governed by the laws of the State of Ohio. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns. Any controversy or claim of any nature, arising out of or relating or referring in any way to this Agreement or its breach, which controversy or claim cannot be amicably resolved, shall be settled in a court of competent jurisdiction in the State of Ohio. Each party consents and agrees to submit to the exclusive jurisdiction of said court and that Franklin County Ohio shall be designated as the venue for the resolution of any claim arising hereunder.

(R. 59-1, Agreement, at 3–4.)

Before enforcing the agreed upon forum selection clause, the Court must determine its validity and scope. A forum selection clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Faur v. Sirius Int'l. Ins. Corp.*, 391 F. Supp. 2d 650, 657 (N.D. Ill. 2005) (citing *Bonny v. The Soc'y of Lloyd's*, 3 F.3d 156, 159 (7th Cir. 1993); *see also Rucker v. Oasis Legal Fin., LLC*, 632 F.3d 1231, 1236 (11th Cir. 2011). The Supreme Court provides that a forum selection clause is unenforceable when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene

7

public policy." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972); *see also Faur*, 391 F. Supp. 2d at 657.

Here, Big Lots does not contest the existence, validity, or scope of the forum selection clause. Instead, Big Lots only argues that "enforcing the forum selection clause and transferring the third-party claims . . . would undoubtedly cause inconvenience to third party witnesses . . . who would have to be deposed in two cases instead of one." (R. 100 at 28, citing *IFC Credit Corp. v. Aliano Bros., Gen. Contractors, Inc.*, 437 F.3d 606, 608 (7th Cir. 2006).) The Court acknowledges that the presumption of validity for forum selection clauses can be overcome "when there is inconvenience to some third party[.]" *IFC Credit Corp.*, 437 F.3d at 608 (citing *Northwestern Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 376 (7th Cir. 1990)). "Where that possibility is slight," however, "the clause should be treated like any other contract." *Northwestern Nat. Ins. Co.*, 916 F.2d at 376. Here, the only "inconvenience" Big Lots alleges is the possibility that third-party witnesses may have to be deposed twice if the Third-Party Complaint is transferred or dismissed pursuant to *forum non conveniens*. This slight burden does not overcome the forum selection clause's presumption of validity.

The forum selection clause is also mandatory. A forum selection clause is mandatory where its "language is obligatory" and "clearly manifests an intent to make venue compulsory and exclusive." *Paper Express Ltd. V. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756 (7th Cir. 1992). The forum selection clause here provides that "[t]his Agreement *shall* be governed by the laws of the State of Ohio. . . . Any controversy or claim of any nature . . . *shall* be settled in a court of competent jurisdiction in the State of Ohio. Each party *consents and agrees* to submit to the *exclusive jurisdiction* of said court and that Franklin County, Ohio *shall* be designated as the venue for the resolution of any claim arising hereunder." (R. 59-1, Agreement, at 3–4, emphasis

added.) The use of "exclusive jurisdiction" in a particular forum shows that the parties intended to make venue exclusive. *See Schwarz v. Sellers Markets, Inc.*, 812 F. Supp. 2d 932, 936 (N.D. Ill. 2011) (citing *Piechur v. Redbox Automated Retail, LLC*, No. 09-CV-984-JPG, 2010 WL 706047, at *3 (S.D. Ill. Feb. 24, 2010) ("By agreeing to submit to the 'exclusive jurisdiction' in a particular forum, the parties in this case have manifested their intent to make that venue exclusive and to exclude venue in all other jurisdictions.")). This intention is especially true when the parties use the additional terms "shall" and "any controversy or claim of any nature" in the clause, further indicating that the selected forum is exclusive and mandatory. *See Paper Express, Ltd.*, 972 F.2d at 756.

The forum selection clause's scope also covers the claims alleged in the Third-Party Complaint. Courts construe forum selection clauses broadly. *See XADO Tech. LLC v. U.S. Envirotech, Inc.*, No. 13 C 6901, 2014 WL 3882667, at *3 (N.D. Ill. Aug. 5, 2014) (quoting *Am. Patriot Ins. Agency v. Mut. Risk Mgmt.*, 364 F.3d 884, 889 (7th Cir. 2004)). Here, the forum selection clause pertains to "*[a]ny* controversy or claim of *any nature*, arising out of or relating or referring in *any way* to this Agreement or its breach[.]" (R. 59-1, Agreement, at 3–4, emphasis added.) Count One of the Third-Party Complaint seeks "contractual indemnification," and Count Two alleges "breach of contract." (R. 59, Third-Party Complaint, at 6–7.) Both Counts stem directly from the Agreement. As a result, they both fall within the forum selection clause's scope.

The Court, therefore, finds the forum selection clause is valid and mandatory. Further, Big Lots's claims fall within the forum selection clause's scope. The Court now turns to the forum selection clause as it relates to Sterling's motion to dismiss pursuant to *forum non conveniens* or, in the alternative, transfer pursuant to 28 U.S.C. § 1404(a).

## II. Dismissal Pursuant to *Forum Non Conveniens*

The Court must first determine whether the forum selection clause designates a federal or nonfederal forum, triggering either a § 1404(a) transfer analysis or a *forum non conveniens* dismissal analysis, respectively. *See Atlantic Marine Const. Co., Inc.* 134 S. Ct. at 580 ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer. . . . For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* has continuing application in federal courts.") (citations and quotation marks omitted).

### A. The Forum Selection Clause Designates a Nonfederal Forum

Sterling argues that "[t]he forum[-]selection clause contained in the contract between Big Lots and Sterling is valid and should be enforced." (R. 83 at 3.) Importantly, Sterling maintains that the language of the forum-selection clause exclusively calls for an Ohio state court forum. (R. 102 at 10.) "Due to an indisputably valid and applicable forum-selection clause," Sterling concludes, "the Court should dismiss the Third-Party Complaint under the doctrine of *forum non conveniens*." (*Id*. at 8.)

Big Lots, however, in its thirty page response to Sterling's motions, only addresses Sterling's motion to dismiss pursuant to *forum non conveniens* in a footnote. (R. 100 at 23 n.6.) Indeed, Big Lots does not address *Atlantic Marine Const. Co., Inc.* at all. Instead, Big Lots concludes that the forum-selection clause includes federal forums, calling for a § 1404(a) transfer analysis. Specifically, Big Lots argues that "[w]here, as here, a forum selection clause states that a matter may be brought in 'a court' of competent jurisdiction in a particular county, without

10

specifying a court system, courts have consistently held that the phrase 'a court' includes both state and federal courts." (R. 100 at 23 n.6, citing, in part, *Bodine Elec. Co. v. Viking Access Sys., LLC.*, No. 09-3055, 2009 WL 3055362, at *1 (N.D. Ill. Sept. 22, 2009).) The Court disagrees.

"For federal court purposes, venue is not stated in terms of 'counties.' Rather, it is stated in terms of 'judicial districts.'" *Progressive Publ. Inc. v. Capital Color Mail, Inc.*, 500 F. Supp. 2d 1004, 1006 (N.D. Ill. 2007) (citing *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318 (10th Cir. 1997) ("Because the language of the clause refers only to a specific county and not to a specific judicial district, we conclude venue is intended to lie only in state district court.") (citing 28 U.S.C. § 1391)). Here, the forum selection provides, in relevant part, that "[t]his agreement shall be governed by the laws of the State of Ohio. . . . Any controversy or claim . . . shall be settled in a *court of competent jurisdiction in the State of Ohio*. Each party consents and agrees to submit to the exclusive jurisdiction of said court and that *Franklin County Ohio shall be designated as the venue* for the resolution of any claim arising hereunder." (R. 59-1, Agreement, at 3–4, emphasis added.) Accordingly, the Court finds that the Agreement's forum selection clause designates an Ohio state court forum. As a result, the agreed upon forum selection clause calls for a *forum non conveniens* analysis. *See Atlantic Marine Const. Co., Inc.* 134 S. Ct. at 580 ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."); *see also Professional LED Lighting, Ltd.*, 2014 WL 6613012, at *7–8 (citing *Atlantic Marine Const. Co., Inc.*, 134 S. Ct. 568).

### B. Dismissal of the Third-Party Complaint is Warranted Pursuant to the Doctrine of *Forum Non Conveniens*

"The common law doctrine of *forum non conveniens* allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 421 (7th Cir. 2009) (citing *Clerides v. Boeing Co.*, 534 F.3d 623, 627–28 (7th Cir. 2008)). First, courts must determine whether "an alternative forum . . . is both 'available' and 'adequate.'" *Id*. (quoting *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1999)). "If an adequate forum exists, the district court should consider whether a *forum non conveniens* dismissal would serve the private interests of the parties and the public interests of the alternative forums." *Id*. at 424–25 (quoting *Kamel*, 108 F.3d at 803). "In the context of a forum selection clause," however, "the doctrine is modified[.]". *Atlantic Marine Const. Co., Inc.* 134 S. Ct. at 582; *see also Exhibit Sys., Inc. v. Pico Art Int'l. Pte., Ltd.*, 15 C 2930, 2015 WL 3930265, at *2 (N.D. Ill. June 25, 2015) (quoting *Atlantic Marine Const. Co., Inc.* 134 S. Ct. at 582). Specifically, the analysis changes in two relevant ways: 1) the plaintiff's choice of forum merits no weight [and] 2) private-interest factors are given no weight as the court is only to consider public-interest factors[.]" *Id*. at 581–83. The public-interest factors include:

> the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Stroitelstvo Bulgaria Ltd.*, 589 F.3d at 425 (quoting *Clerides*, 534 F.3d at 628). According to the Supreme Court, the agreed upon forum selection clause "should be given controlling weight in

all but the most exceptional cases." *Atlantic Marine Const. Co., Inc.* 134 S. Ct. at 583; *see also Exhibit Sys., Inc.*, 2015 WL 3930265, at *2. Indeed, since *Atlantic Marine Const. Co., Inc.*, the Seventh Circuit has continued to treat forum selection clauses as important and to uphold them in the same manner as other contractual provisions, stating:

> [a] forum selection clause "may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain."

*J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 651 (7th Cir. 2014) (quoting *Atlantic Marine Const. Co. Inc.*, 134 S. Ct. at 583). As such, "[i]t is the defendant's burden to show that those factors 'overwhelmingly disfavor' enforcement of the forum selection clause." *Exhibit Sys., Inc.*, 2015 WL 3930265, at *2 (quoting *Atlantic Marine Const. Co., Inc.* 134 S. Ct. at 581).

Big Lots fails to meet its burden. Big Lots first argues that "Big Lots chose to pursue its third-party claims against Sterling in federal court, and that choice was consistent with the forum selection clause and should be honored." (R. 100 at 28.) Contrary to Big Lots's contention, federal court is *not* consistent with the forum selection clause, as described earlier. Moreover, Big Lots's argument is also misapplied, as the Court gives no weight to the third-party plaintiff's choice of forum. *See Atlantic Marine Const. Co., Inc.*, 134 S. Ct. at 582. Instead, the parties contractually designated the state courts of Franklin County, Ohio, an agreed upon alternative forum that is adequate and available.

Big Lots also focuses on private interest factors such as the costs of obtaining willing witnesses, as noted earlier. (R. 100 at 28 ("Here, enforcing the forum selection clause and transferring the third-party claims . . . would undoubtedly cause inconvenience to third party witnesses (such as Ms. Abrams, who no longer works for Big Lots) who would have to be

13

deposed in two cases instead of one.")) Indeed, most of Big Lots's arguments against transferring or dismissing the case revolve exclusively on "practical problems that make trial of a case easy, expeditious, and inexpensive." *Stroitelstvo Bulgaria Ltd.*, 589 F.3d at 425 (quoting *Clerides*, 534 F.3d at 628); *see also* (R. 100 at 27–28 ("Allowing Sterling to enforce the forum selection clause in this case would . . . make no practical sense. Transferring the third-party claims . . . would only make it more likely that the parties have to produce their witnesses for deposition more than once. Big Lots's witnesses are located in Columbus, Ohio, but, as explained above, those same witnesses have knowledge relevant to [Ms. Robrinzine's] claims in the first-party action. Transferring Big Lots' third-party claims . . . will serve only to ensure that these witnesses have to testify at two trials, in two different . . . courts. The same is true of Sterling's witnesses, wherever they are located.")) The Court, however, does not give any weight to Big Lots's private interest factors in light of the agreed upon forum selection clause. *See Atlantic Marine Const. Co., Inc.*, 134 S. Ct. at 582.

Notably, Big Lots fails to assert any of the above-listed public-interest factors in favor of denying dismissal pursuant to *forum non conveniens*. Given that "[t]he public interest factors 'will rarely defeat a transfer[3] motion,'" the Court finds no public interest factors present here that counsel against enforcement of the forum selection clause. *Professional LED Lighting, Ltd.*, 2014 WL 6613012, at *7–8 (quoting *Atlantic Marine Const. Co., Inc.*, 134 S. Ct. at 582). Thus, Big Lots fails to show that the *forum non conveniens* balancing standard "'overwhelmingly

---

[3] Here, although this is a motion for dismissal, the Supreme Court has held that "because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Atlantic Marine Const. Co., Inc.*, 134 S. Ct. at 580 (citing *Stewart*, 487 U.S. 22, 37, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (SCALIA, J., dissenting) (Section 1404(a) "did not change 'the relevant factors' which federal courts used to consider under the doctrine of *forum non conveniens*" (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S. Ct. 544, 99 L. Ed. 2d 789 (1955))).

disfavor[s]' enforcement of the forum selection clause." *Exhibit Sys., Inc.*, 2015 WL 3930265, at *2 (quoting *Atlantic Marine Const. Co., Inc.* 134 S. Ct. at 581).

Big Lots's counterargument that "Sterling does not cite to Rule 12(b)(3) or provide any support for its opening assertion that this District is an 'improper venue' for the third-party claims" is misplaced. (R. 100 at 10.) Indeed, "Rule 12(b)(3) does not provide a basis for remand or dismissal here." *Exhibit Sys., Inc.*, 2015 WL 3930265, at *2 (quoting *Atlantic Marine Const. Co., Inc.* 134 S. Ct. at 577). "The presence of a forum selection clause in the contract between the parties has no effect on the analysis of whether venue is 'proper' under § 1391. *Id*. (quoting *Atlantic Marine Const. Co., Inc.* 134 S. Ct. at 577). Instead, as detailed above, the Court enforces the forum selection clause through the doctrine of *forum non conveniens*. The Court acknowledges that Sterling's argument often seamlessly switches between discussing the proper "venue" and the forum selection clause. Despite Sterling's word-choice, however, the parties ultimately agree that venue is proper under § 1391 and disagree as to whether the agreed upon forum selection clause should trigger dismissal pursuant to *forum non conveniens*.

In addition, Big Lots's counterargument that it may waive the forum selection clause because it is simply for Big Lots's benefit is unpersuasive. Specifically, Big Lots contends that "[t]he forum selection clause was included in the Agreement for the sole benefit of Big Lots. Big Lots resides in Columbus, Ohio, which is in Franklin County, Ohio. Sterling is a Delaware corporation with its headquarters in New York. The Agreement is a Sterling form, prepared by Sterling, as made clear by the Sterling footer on each page of the Agreement. It is self-evident that the parties chose (and, more importantly, that Sterling agreed to) venue in Franklin County, Ohio for the benefit of Big Lots." (R. 100 at 26–27.) As Big Lots admits, however, Sterling has opened a regional office in Cleveland, Ohio within the past few years. (R. 100 at 27 n.5.)

Indeed, Sterling notes, in relevant part, that "the Ohio forum is beneficial to Sterling because Sterling employs individuals in Ohio that are centrally involved with the Big Lots relationship [and] because there are former Sterling employees residing in Ohio[.]" (R. 102 at 13.) Further, agreed upon forum selection clauses, absent infirmities such as fraud or duress, are often valid, mutually beneficial products of contractual compromise. As the Seventh Circuit has noted,

> [t]he attitude of this circuit toward the validity [of forum selection clauses] . . . was made clear in *Northwestern Nat'l. Ins. Co.*, where, citing the Supreme Court's decision in *M/S Bremen*, and an earlier decision by this court, we said that . . . "[t]hey make clear that since a defendant is deemed to waive (that is, he forfeits) objections to personal jurisdiction or venue simply by not making them in timely fashion, a potential defendant can waive such objections in advance of suit by signing a forum selection clause. Their approach is to treat a forum selection clause basically like any other contractual provision and hence to enforce it unless it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract." 916 F.2d at 375. Freedom of contract requires no less. Potential defendants would not agree to the inclusion of such a clause in their contracts if they thought it would put them at a disadvantage should the parties have a dispute that resulted in litigation, unless they were compensated for assuming that risk. If as seemed apparent in *Northwestern* as in the present case the clause did favor the other party to the contract, then probably "the defendants were compensated in advance," in other terms of the contract such as the price, "for bearing the burden of which they now complain," and if so they would "reap a windfall if they are permitted to repudiate the forum selection clause." *Id.* at 378.

*IFC Credit Corp.*, 437 F.3d at 609–10 (citations omitted). Both parties are sophisticated corporations that signed the Agreement, including the agreed upon forum selection clause. *See Northwestern Nat. Ins. Co.*, 916 F.2d at 378 ("The defendants are wealthy tax-shelter investors. They knew that by signing the indemnity agreement they were incurring a potential liability[.]"); *see also M/S Bremen*, 407 U.S. at 17–18 ("This case . . . involves a freely negotiated international commercial transaction between a German and an American corporation[.] . . . Whatever 'inconvenience' Zapata would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting.") "In such

16

circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 18. Big Lots makes no such showing.

Thus, the Court enforces the agreed upon forum selection clause designating a non-federal forum. As a result, the Court dismisses the Third-Party Complaint pursuant to the doctrine of *forum non conveniens*.

## CONCLUSION

For the foregoing reasons, the Court grants Sterling's motion to dismiss the Third-Party Complaint pursuant to the agreed upon forum selection clause and the doctrine of *forum non conveniens*. The Third-Party Complaint is dismissed without prejudice to file in the appropriate forum. The Court denies Sterling's other motions as moot.

**DATED:** June 24, 2016                                       **ENTERED**

                                                                         AMY J. ST. EVE
                                                                         United States District Court Judge